UNITED STATES of America,
Plaintiff,

v.

Juan MORALES–PUGA, Defendant.

No. CR. H–01–743.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 19, 2002.

Juan Morales–Puga, In Custody, Houston Interpreter, U.S. District Court, Marjorie A Meyers, Office of Public Defender, Houston, TX, for Juan Morales–Puga.

Douglas Davis, Office of U.S. Attorney, Houston, TX, U.S. Marshal—H, Houston, TX, U.S. Probation—H, Houston, TX, Pretrial Services—H, Houston, TX, Financial Litigation, U.S. Attorney's Office, Southern District of Texas, Houston, TX, for U.S.

### ORDER

LAKE, District Judge.

On February 14, 2002, this case was tried before the court without a jury. The parties entered into a Joint Stipulation of Facts ("Stipulation"). For the reasons stated below, based upon the stipulated facts, the court concludes that Juan Morales–Puga is guilty of illegal reentry under 8 U.S.C. § 1326(a).

### I. *Background and Facts*

On October 3, 2001, a grand jury sitting in the Southern District of Texas indicted Juan Morales–Puga for illegal reentry in violation of 8 U.S.C. § 1326(a) & (b)(2). (Indictment, Docket Entry No. 1) Morales–Puga pleaded guilty to the indictment on October 29, 2001. (Hearing Minutes, Docket Entry No. 7) Morales–Puga later filed an Unopposed Motion to Withdraw Guilty Plea (Docket Entry No. 10), which

the court granted on January 11, 2002 (Docket Entry No. 14).

Morales–Puga asserts that he has a legal defense to the charge against him. He argues that in the unique circumstances of this case, he was not required to obtain advance consent from the Attorney General to reenter the United States. Morales–Puga asserts that he falls under an exception provided by 8 U.S.C. § 1326(a)(2)(B) and thus cannot be found guilty of the crime of illegal reentry under 8 U.S.C. § 1326(a).

Morales–Puga stipulates that he is a citizen of Mexico and that he has never been a citizen of the United States. (Stipulation ¶ 1) In 1989 Morales–Puga attempted to enter the United States at Brownsville, Texas, where he was arrested at United States Customs secondary inspection for possession of marijuana. (Stipulation ¶ 2) Morales–Puga pleaded guilty in the Southern District of Texas, Brownsville Division, to importation of marijuana and was sentenced to 27 months in prison. (Stipulation ¶ 3) After serving his sentence Morales–Puga was excluded from admission and deported from the United States on August 21, 1999. (Stipulation ¶ 4) Morales–Puga reentered the United States in December of 1996, or January of 1997, without seeking or obtaining the permission of the Attorney General of the United States. (Stipulation ¶ 5) Morales–Puga was found in the United States at Humble, Texas, on March 21, 2001. (Stipulation ¶ 6)

## II. *Analysis*

Morales–Puga was indicted for violating 8 U.S.C. § 1326(a), which states:

Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed[1], unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned . . .

Morales–Puga contends that he falls within the § 1326(a)(2)(B) exception. He argues that he was "denied admission and removed" and that pursuant to 8 U.S.C. § 1182(a)(6)(A)(1994), he was not required to obtain advance consent from the Attorney General to reapply for admission. Because the § 1326(a)(2)(B) exception (hereinafter the "no-consent-required exception") applies to him, Morales–Puga argues that he is not guilty of illegal reentry. The government does not dispute that Morales–Puga was "denied admission and removed" within the meaning of the no-consent-required exception.

When Morales–Puga reentered this country in December of 1996 or January of 1997, § 1182(a)(6)(A) stated as follows:

---

1. Title 8 of the United States Code, pertaining to Aliens and Nationality, underwent significant changes in 1996. However, none of the changes to the sections relevant to this case went into effect until after Morales–Puga reentered the United States. *See* 8 U.S.C.

§§ 1182, 1326 (Supp.1996). The 1994 version of this statute, which was effective when Morales–Puga reentered the United States, read "with respect to an alien previously excluded and deported." This difference does not affect the court's analysis.

(a) Classes of excludable aliens

Except as otherwise provided in this chapter, the following describes classes of excludable aliens who are ineligible to receive visas and who shall be excluded from admission into the United States:

.　　.　　.　　.　　.

(6) Illegal entrants and immigration violators

(A) Aliens previously deported

Any alien who has been excluded from admission and deported and who again seeks admission within one year of the date of such deportation is *excludable,* unless prior to the alien's reembarkation at a place outside the United States or attempt to be admitted from foreign contiguous territory the Attorney General has consented to the alien's reapplying for admission.

8 U.S.C. § 1182(a)(6)(A) (1994) (emphasis added). Under this provision an alien previously excluded from admission and deported had to wait one year before reapplying for admission unless the Attorney General had consented to an earlier application. Morales–Puga reads this provision broadly to mean that since he remained out of the United States for more than one year after he was deported, he was not required to obtain consent from the Attorney General to reapply for admission. Morales–Puga concludes that since he needed no advance consent, the § 1326(a)(2)(B) no-consent-required exception applies to him.

The court is not persuaded by Morales–Puga's argument. Section 1182(a)(6)(A) merely said that before the expiration of the one-year period, excluded and deported aliens were "excludable" unless they

had obtained the consent of the Attorney General to reapply for admission to the United States. The language of the statute does not imply that after the one-year period, such aliens had license to reenter the United States with impunity.

The precise legal issue is whether and how the one-year bar of § 1182 affects criminal liability under § 1326(a). The Fifth Circuit addressed this very question as to a prior version of § 1182. In *United States v. Bernal–Gallegos,* 726 F.2d 187 (5th Cir.1984), the court analyzed the interplay between § 1182(a)(17), which bars an alien from reapplying for admission without consent for five years, and § 1326 which imposes a criminal penalty for illegal reentry. The court explained that "[s]ection 1182(a)(17) is a civil statute governing the provision of visas; its legislative history does not reveal an intent to amend the provisions of § 1326. In contrast, § 1326 is a criminal statute intended to punish aliens who had previously been deported, and are subsequently found in the country unlawfully." *Bernal–Gallegos,* 726 F.2d at 188 (citations omitted). The court concluded that § 1182(a)(17) does not modify § 1326 and that the defendant, who had remained outside the United States for more than five years, was properly convicted. *Id.*

The language pertaining to Attorney General consent in 8 U.S.C. § 1182(a)(17) (1982) is nearly identical to the language in 8 U.S.C. § 1182(a)(6)(A) (1994).[2] The language in § 1326(a) has not changed since *Bernal–Gallegos* was decided. The fact that § 1182(a)(17) imposed a five-year time period while the statute in effect when Morales–Puga reentered the United States § 1182(a)(6)(A) imposed a one-year time

**2.** Both statutes state "... unless prior to ... [the alien's] attempt to be admitted from foreign contiguous territory the Attorney General has consented to [the alien's applying or]

reapplying for admission." The differences between the statutes are in connection with the bracketed language only.

period does not affect the precedential value of *Bernal–Gallegos*.

Morales–Puga argues that there is a distinction between this case and *Bernal–Gallegos* because Morales–Puga was "excluded" and deported, while in *Bernal–Gallegos* the defendant had been "arrested" and deported. This distinction might be relevant if the court had made its decision on that basis, but the Fifth Circuit analyzed the interplay of the two statutes and did not rely upon the distinction between "excluded" and "arrested."

Morales–Puga also points out that in 1996 § 1182 was the only statute other than § 1326 that dealt with Attorney General consent. He argues that the § 1326(a)(2)(B) no-consent-required exception would be meaningless if it were not referring to § 1182. The *Bernal–Gallegos* court specifically recognized that § 1326 referred to § 1182. The court explained that after the five-year period set forth in § 1182(a)(17) had elapsed the defendant could properly have obtained a visa without special prior permission of the Attorney General. But because the defendant failed to do so, and had not obtained prior permission to enter the United States, he was in the United States illegally and was therefore in violation of 8 U.S.C. § 1326.

*Bernal–Gallegos* teaches that in order for an alien to satisfy the no-consent-required exception, he must show that he has taken all necessary steps to negate the requirement that he obtain prior consent from the Attorney General. Simply waiting the specified time period after deportation does not necessarily mean that the defendant did not need permission of the Attorney General to reapply for admission. As the Fifth Circuit explained, if a deported alien absents himself from the United States for the time specified in § 1182, *and meets all other requirements,* he may be eligible for a visa and may be able to enter the United States legally without the consent of the Attorney General. *Bernal–Gallegos,* 726 F.2d at 188. But an excluded and deported alien cannot wait for a certain amount of time to expire, cross the border illegally, and then expect to escape criminal liability under § 1326. The alien must follow the procedures set forth under the law for legally entering the United States.

For example, under 8 C.F.R. § 212.2(a) an alien such as Morales–Puga who has been deported or removed must present evidence to a consular or immigration official that he has been absent from the United States for five years, or twenty years if he has been convicted of an aggravated felony. The regulation specifically states that absent such evidence the alien must seek consent to reapply for admission to the United States. The stipulated facts show, at best, that Morales–Puga might have been eligible to reapply for admission without consent had he complied with all other requirements. The stipulated facts do not show that Morales–Puga followed any approved procedure for reentering this country. The stipulated facts do not give any indication how Morales–Puga came to be present in the United States. As a result, Morales–Puga has failed to satisfy his burden of showing that no Attorney General consent was required for him to reapply for admission to the United States.

The stipulated facts demonstrate that defendant Morales–Puga was an alien at the time of the indictment in this case (Stipulation ¶ 1); that Morales–Puga was found in the United States, in the Southern District of Texas (Stipulation ¶ 6); that before being found in the United States Morales–Puga was excluded from admission and deported from the United States (Stipulation ¶ 4); that Morales–Puga had not obtained the consent of the Attorney

General to reenter the United States (Stipulation ¶ 5); and that Morales–Puga has not shown that he was not required to obtain permission from the Attorney General to reapply for admission to the United States. Morales–Puga is therefore guilty beyond a reasonable doubt of illegal reentry under 8 U.S.C. § 1326(a).

### III. *Conclusion and Order*

For the reasons stated above, the court finds that defendant, Juan Morales–Puga, is **GUILTY** of illegal reentry under 8 U.S.C. § 1326(a).